52 CCPA

### Application of Patrick H. HUME.
### Patent Appeal No. 7386.

United States Court of Customs
and Patent Appeals.
June 17, 1965.

Worley, C. J., and Rich and Smith, JJ., dissented in part.

Henry L. Brinks, Hume, Groen, Clement & Hume, Chicago, Ill. (Patrick H. Hume, Chicago, Ill., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Jere Sears, Washington, D. C., of counsel), for Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Judges.

ALMOND, Judge.

This is an appeal from the decision of the Board of Appeals affirming the examiner's rejection of claims 3, 4 and 9 in appellant's application for patent [1] for "Cam Cleat." The examiner allowed claims 5 and 6. As noted by appellant, "the invention is directed to cam cleats wholly constituted to incorporate the invention, or as an accessory for attachment to existing cam cleats to adapt them to the invention." [2]

Claims 3 and 9 are reproduced as illustrative:

3. A cam cleat comprising a base, a cam element pivoted to said base about an axis normal to the latter, means confronting said cam element on said base coacting therewith to form a line-receiving nip, said cam element being relatively displaceable around its pivotal axis to vary the size of said nip for the accommodation of lines of different diameters, spring means biasing said cam element toward said confronting means and additional cam means upon said cam element and faired into said nip constituting a V-shaped entry on the latter in cooperation with said confronting means, so that a line moved toward said nip in a direction radially of the line effects relative displacement between said cam element and said confronting means to the dimension necessary to receive such line within said nip.

9. A cam cleat comprising at least one rotary wedge having a gripping surface developed around a center of revolution, said gripping surface cooperating with another element to define a line-jamming passage, said passage having a first flared entrance formed by said gripping surface's being projected at graduated radial dimensions from said center of revolution, and means defining a second flared entrance to said passage oriented approximately 90° to said first flared entrance, said means being adapted to be engaged by a line intermediately of its ends, said passage being opened to admit a line pressed against said second flared entrance means by movement

---

1. Serial No. 35,723 filed June 13, 1960.

2. The claims on appeal are in the first category, while the allowed claims recite the attachment.

of the line in a direction that is more radial of the line than axial thereof.

Figures 1 and 2 of appellant's drawings are reproduced below:

Explanatory of the subject matter and the object of the claimed invention, the application states:

Conventionally, cam cleats comprise a pair of spring-biased cam elements, or a single spring-biased cam element and an abutment, that cooperate with each other to define a line-receiving nip between them.

The coaction is such that a line, e. g., a sheet, a halliard, or other component of running rigging of a sailboat, when forced into the nip of the cam cleat against the bias of the spring means, may be moved axially in one direction of the line, but is securely held against retro-

gressive movement in the opposite axial direction.

Under certain conditions, such as those encountered when sailing single-handedly in relatively strong winds, it is extremely difficult to force entry of a line into the ordinary types of cam cleat without effecting a substantially axial traverse of line across the nip of the cam elements while bearing down hard on the lead end of the line. For small boat handling, a helmsman frequently has but one hand with which to trim sails by adjusting the sheets, and in strong winds a sheet frequently cannot be moved axially the amount necessary to reengage the cam elements of a cleat.

The prime object of this invention is to provide cam cleats with means for facilitating the entry of a line between the cam elements upon movement of the line sideways radially of the line toward the nip of the cleat, thereby displacing the cam elements and enlarging the nip to receive and hold the line without necessitating its axial movement therein.

Referring to the drawings, base 10 shows imposed thereon a pair of cam elements 12 and 14 pivoted on pins 16 and 18 for pivotal movement toward and away from each other about axes normal to base 10. Elements 12 and 14 may be urged toward each other by spring means 15, said elements cooperating to form line receiving nip 20 between them, which, by the relative displacement of the cam elements 12 and 14, can be enlarged to accommodate lines of different diameters. Elements 12 and 14 have line-engaging faces 22 and 24 in confronting relation to define the nip, said faces having serrations 26 (Fig. 1) to increase resistance to slippage. Cam elements 12 and 14 each has erected upon its side remote from base 10, cam horns 28 and 30 which cooperate to form a V-shaped entry into nip 20. Phantom lines L illustrate a line in repose in the V-shaped entry of the cam cleat.

When positioned in the cam cleat as shown in Fig. 2, line L may be moved in the direction of its axis as indicated by arrow B, but is held against retrogressive movement in the opposite axial direction by virtue of the binding action of the cams being forced to bear upon the line by pressure exerted by spring 15.

It is pertinent to note that the application states:

The invention is realized by the utilization of any means in association with a cam cleat to facilitate the admission of a line therein without necessitating (although not precluding) a concomitant axial movement of such line toward and through the cleat * * *.

It is also noted that the:

* * * cam-horns flare to a dimension approaching that of the diameter of the largest line that can be operatively used with the cam cleat of the size selected. This dimension need not be as large as the line, since a lesser space of entry into the nip will still be effective to insure the introduction of a line therein that is somewhat larger.

The only reference relied upon is:
Roberts et al.
2,627,834
February 10, 1953

Roberts shows cam cleats for use on sail boats for "jamming and holding the main sheet rope thereof in such manner and position that the rope may be instantly released from the cleat whenever

it becomes necessary or advisable to do so."

Figures 3 and 5, reproduced below, show the construction of the cleat.

Two cam members 22 and 23 with outer opposing serrated cam surfaces are mounted on flat transverse portion 21. As shown in Fig. 5, the two cam members are each pivoted on bushing 25. Within the shell of each cam is coil spring 27. "As the coil spring 27 in each cam is wound in opposite directions, the two cam members 22 and 23 are biased in opposite directions, or toward each other in such manner that the serrated cam surfaces 24 always assume or tend to assume their normal positions as shown in Fig. 3."

"As is best shown in Fig. 5, the serrated cam surfaces 24 are slightly tapered outwardly which facilitates the entrance of the main sheet rope into operative jamming position between the two cams and also facilitates the instant disengagement of the sheet rope from its jammed position * * *." The patentee states that engagement of the line between the serrated cam surfaces is accomplished by drawing the rope through the device in contact with the corners of the two serrated cam surfaces "which moves the cam surfaces apart and permits the rope to enter between the cam surfaces * * *."

The examiner held claims 3, 4 and 9 "unpatentable over Roberts et al." The examiner stated that there is "no structure in claim 3 not shown by Roberts et al."; that claim 4 "fails to include any structure not shown by the reference and fails to define the structure so that there may be any mode of operation different from that of Roberts et al" and that claim 9 was unpatentable over Roberts et al. "for the same reasons as stated * * * in the discussion of claim 3."

The board stated:

It appears to us that the structure required by claims 3, 4 and 9 is present in the reference in the manner fully applied by the Examiner.

Adhering to its decision on reconsideration, the board stated:

We find no requirement in claims 3, 4 or 9 that the nip and entry be differently angled and continue of the view that such claim language is so broadly phrased as to be fairly met by the reference structure wherein a single sloped face has the capability of providing both the nip and entry functions.

In comparing appellant's drawing and description of his invention with that of the reference, we perceive a clear difference between them: appellant's additional cam means or "cam horns" define a greater vertical angle of entry for a line than does the nip. Unfortunately, no such limitation was placed in the claims.

Thus the solicitor's view of the rejection is stated as follows:

> The rejection is predicated on the breadth of the claims and a reasonable finding that the outer portions of cleat surfaces 24 in Roberts et al. represent "additional cam means" capable of moving the cleat elements apart when engaged by a rope moved into the nip. * * *

It seems clear that the examiner's finding was based upon his feeling that the claims did not require the divergent angle between the surfaces of the additional cam means to be greater than the divergent angle between the nip surfaces. The examiner stated there is "no requirement in claims 3, 4 or 9 that the nip and entry be differently angled * * *." While we agree that no such limitation is expressly stated, we feel that the language of the claim when considered in light of the specification does require such a limitation.

In claim 3 the "cam horns" are described as follows:

> * * * additional cam means upon said cam element and faired into said nip constituting a V-shaped entry on the latter in cooperation with said confronting means * * *.

The first significant limitation is *additional* cam means. To be sure, additional could refer to another portion of a continuous surface. However, the *additional* cam means is also *faired* into the nip. "Fair" is defined in Webster's New International Dictionary (2d ed.) as follows:

> "2. *Shipbuilding*. To make smooth and regular * * *." It is difficult to see how two surfaces could be faired unless they formed an angle one with the other. The solicitor argues that the continuous surface of Roberts is smooth and thus faired. Any ambiguity in the use of "faired" is quickly resolved, however, by reference to the drawing which shows that the additional cam means surface is at an angle with the nip surface and that the intersection of the two surfaces is faired to provide for passage of the line into the nip. Furthermore, the additional cam means constitutes a

V-shaped entry into the nip. We think it would require a strained interpretation of this language to hold that the upper portion of the Roberts' nip is a V-shaped entry into the nip. Thus we think that the limitations of claim 3 when read together require the surfaces of the additional cam means to form a greater divergent angle than formed by the surfaces of the nip. On that basis we conclude that claim 3 is not anticipated by Roberts which shows a continuous surface. Claim 4 also recites an "additional cam means * * * cooperating to define a V-entry into said nip" and for similar reasons we hold that it is not anticipated by Roberts.

We feel that claim 9 presents a different situation. Claim 9 is drafted in different language than claims 3 and 4 in reciting a "line-jamming passage" rather than a nip and "a second flared entrance" rather than additional cam means. A "first flared entrance" recited in the claim corresponds to the entrance shown in appellant's figure 2 above. We see no reason why the upper portion of the Roberts' nip could not be considered a flared entrance. Resort to appellant's specification is of little value in interpreting the claim since the claim language finds no correspondence in the specification. We thus affirm the examiner's rejection of claim 9.

Appellant has argued that the functional limitations in claim 9 could not be met by the Roberts' structure. We have carefully considered the argument but find nothing to indicate that the examiner was in error in holding that the Roberts' structure could perform the recited function.

For the foregoing reasons, the board is affirmed as to claim 9 and reversed as to claims 3 and 4. The board's decision is thus modified.

Modified.

WORLEY, C. J., did not sit but is participating by agreement of counsel.

WORLEY, Chief Judge (concurring in part and dissenting in part).

It seems to me the majority opinion imports a limitation into the claims that

the nip and entry of appellant's device are at different angles. I find no such limitation to be present and no reversible error in the examiner's and board's application of the Roberts' disclosure to the subject matter of claims 3 and 4, as well as claim 9. Accordingly, I would affirm the decision in its entirety.

RICH, Judge (dissenting in part, with whom SMITH, Judge, joins).

I have a different view of claim 9 than that stated in the court's opinion by reason of which I would also reverse the rejection of that claim.

It is said that claim 9 recites "a 'line-jamming passage' rather than a nip and 'a second flared entrance' rather than an additional cam means." I think this is an erroneous reading. Here is the pertinent language of claim 9 (my emphasis):

> * * * and MEANS defining a second flared entrance to said passage oriented approximately 90° to said first flared entrance, SAID MEANS being adapted to be engaged by a line intermediately of its ends, said passage being opened *to admit a line* pressed against SAID second flared entrance MEANS *by movement of the line in a direction that is more radial of the line than axial thereof.*

I think this as clearly distinguishes from the sole reference as the other language found to do so in claims 3 and 4 albeit it is functional language. The function performed, as recited in claim 9, cannot be performed by the structure of the reference. The reference requires movement of the line that is more axial than radial, the reverse of what the claim states.

As for allegedly not reciting a "nip" or a "cam means", the "nip" of claims 3 and 4 is the "first flared entrance" of claim 9, parallel to base 10 between faces 22 and 24, denoted 20. It is defined in claim 9 as the first *part* of the "line-jamming passage," called "line-receiving nip" in claim 3 and "line-gripping nip" in claim 4. I cannot agree that claim 9 differs materially with respect to a "nip."

As to allegedly not reciting "cam means", claim 9 calls for "MEANS defining a second flared entrance" and proceeds to limit that, or those, means by functional limitations. This is a good way to write a claim, assuming a court can be brought to an understanding of the meaning of the language. Claim 9 is, of course, a definition of a *combination* of elements constituting the invention. 35 U.S.C. § 112, 3rd par., expressly authorizes the elements of such a claim to be defined in terms of "a means * * * for performing a specified function without the recital of structure * * *", and that is what appellant has done in claim 9. If heed is paid to the function performed by the recited MEANS, which is thereby limited, it quite clearly appears as a "cam means" in the same sense as in claims 3 and 4. Failure to use the word "cam" in claim 9 is no ground for saying that additional cam means are not *included* in claim 9, for they clearly are, when the language is understood according to its clear and intended meaning. The function is a camming function.

I therefore see claim 9 as containing in substance the *same* limitations which the court opinion finds to be a *sufficient basis* for reversing the rejection of claims 3 and 4.

Roberts' single entrance may be considered to be a "flared entrance" but it will not perform according to the express functional *limitations* of claim 9 and the claim therefore distinguishes from that reference.

It is said "the claim language finds no correspondence in the specification." Here is the corresponding language:

> * * * means for facilitating the entry of a line between the cam elements upon *movement of the line sideways radially of the line toward the nip of the cleat, thereby displacing the cam elements and enlarging the nip to receive and hold the line without necessitating its axial movement therein.

\* \* \* \* \* \* \*

These cam-horns flare to a dimension approaching that of the diameter of the largest line that can be operatively used with the cam cleat of the size selected. This dimension need not be as large as the line, since a lesser space of entry into the nip will still be effective to insure the introduction of a line therein that is somewhat larger.

\* \* \* \* \* \* \*

Movement of the line L radially toward the nip 20 in direction of arrow A, Figure 1, displaces the cam elements apart progressively until the clearance between the line-engaging faces 22 and 24 of the cam elements is substantially that of the diameter of the line, which then moves into line-holding position.

It seems to me the claim language of claim 9 finds full "correspondence in the specification."

I would reverse the rejection of claim 9 as well as claims 3 and 4.